IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HARCO NATIONAL INSURANCE COMPANY; | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 4:22-cv-307 |
| JF ENTERPRISES, LLC and JEREMY FRANKLIN MITSUBISHI, | ) ) ) ) | |
| Defendants | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff HARCO NATIONAL INSURANCE COMPANY ("Harco"), by and through its undersigned counsel, for its complaint against JF ENTERPRISES, LLC and JEREMY FRANKLIN MITSUBISHI (collectively "JFM"), hereby alleges as follows:

**I.   NATURE OF THE ACTION**

1. This is an action for a declaratory judgment with respect to a commercial package insurance policy issued by Harco to JF Enterprises, LLC d/b/a Jeremy Franklin Mitsubishi seeking a declaration that Harco has no duty to defend or indemnify JFM in connection with a complaint for damages filed against JFM in Jackson County, Missouri, entitled *James Brost v. JR Enterprises, et al,* Case No. 1916-cv-20133 (hereinafter "Underlying Action"), and a related binding arbitration proceeding held before the Honorable Robert Schieber through the Judicial Arbitration and Mediation Services ("JAMS") entitled *James Brost v. JR Enterprises, LLC et al,* Case Number 1916-cv-20133 (hereinafter the "Underlying Arbitration").

**II.   PARTIES**

2. Plaintiff Harco, is, and at all times herein mentioned was, a corporation formed under the laws of the State of Illinois, with its principal place of business in the North Carolina and

1

authorized to conduct business in the State of Missouri.

3. Upon information and belief, defendant JF Enterprises, LLC is, and at all times herein mentioned was, a Missouri limited liability company, with its principal place of business in Missouri and authorized to conduct business in this judicial district in the State of Missouri.

4. Upon information and belief, defendant Jeremy Franklin Mitsubishi, is, and at all times herein was, a Missouri limited liability company, with its principal place of business in Missouri and authorized to conduct business in this judicial district in the State of Missouri.

### III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because, complete diversity exists between the parties and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, insofar as Harco seeks a declaration of rights and duties under an insurance policy.

7. Venue is proper in this judicial district because the acts complained of occurred or their consequences were felt in this judicial district. Further, the Underlying Action which is the subject of this insurance coverage action was filed in this judicial district.

8. Venue is proper in the Western Division of the Western District of Missouri, pursuant to L.R. 3.1(b)2, because Defendants are residents of the Western Division.

### IV. FACTS

9. This declaratory judgment action arises from two separate actions (1) The Underlying Action filed in Jackson County styled *James Brost v. JR Enterprises, LLC et al, Case No. 1916-cv-20133. See Exhibit 1, Original Petition and First Amended Petition,* attached hereto and incorporated by reference; (2) The Underlying Arbitration, entitled *James Brost v. JR Enterprises, LLC et al, Case No. 1916-cv-20133* (hereinafter "Underlying Arbitration"), *See*

*Exhibit 2, Arbitration Award Dated April 6, 2022,* attached hereto and incorporated by reference.

10. Both the Underlying Action and the subsequent Underlying Arbitration arise from James Brost's purchase of a Suzuki SX4 on or about August 22, 2018 from Jeremy Franklin Mitsubishi in Kansas City, Missouri.

*The Underlying Action*

11. On July 22, 2019, James Brost brought a five-count petition against JFM and Credit Acceptance Corporation in Jackson County, Missouri asserting: (1) A request for declaratory judgment under Section 527.101; (2) Permanent Injunction; (3) Violations of the Missouri Merchandising Practicing Act; (4) Fraud; and (5) Claims under the FTC Holder Rule. The first amended petition, filed on August 8, 2019, only added several new alleged facts. The five claims against JFM and Credit Acceptance Corporation as alleged in the original petition remained in the first amended petition. *See* Exhibit 1, *Original Petition and First Amended Petition*.

12. The first amended petition in the Underlying Action alleges that on or about August 22, 2018, Mr. Brost went to the car lot of Jeremy Franklin Mitsubishi and expressed interest in a Suzuki SX4. *See* Exhibit 1, First Amended Petition, ¶ 9-11.

13. During the test drive, the vehicle quickly decelerated. After expressing concern, the salesman told Mr. Brost that he "must be crazy" because "the car was fine" and had recently been inspected. *See* Exhibit 1, First Amended Petition, ¶ 9-11.

14. Mr. Brost further alleged that the brakes of the Suzuki repeatedly failed, sending him through red lights. *See* Exhibit 1, First Amended Petition, ¶ 24.

15. The Underlying Complaint asserts allegations of fraud against JFM for mispresenting the condition of the vehicle, the sale terms, and the obligation to pay for the vehicle. *See* Exhibit 1.

16. As a result of the allegations in the Underlying Action, Mr. Brost sought to recover

3

actual damages, punitive damages, reasonable attorney's fees, and equitable relief. *See* Exhibit 1.

17. On September 20, 2019, Co-Defendant Credit Acceptance filed a Motion to Compel Arbitration.

18. Shortly thereafter, the parties agreed to binding arbitration. The matter was moved from Jackson County and sent to binding arbitration at JAMS before Judge Robert Schieber. On January 7, 2020, Plaintiff filed a Notice of Dismissal without Prejudice.

*The Underlying Arbitration*

19. An Underlying Arbitration hearing was held before Honorable Judge Robert Schieber in connection with the Underlying Action on September 16-17, 2021 to arbitrate the claims asserted by James Brost ("Brost") against JFM and Credit Acceptance Corporation ("Credit Acceptance").

20. Mr. Brost submitted two claims for determination by the arbitrator: (1) violations of the Missouri Merchandising Practices Act ("MMPA") by Jeremy Franklin and Credit Acceptance; and (2) fraud by Jeremy Franklin..

21. On April 6, 2022, Judge Schieber entered an Arbitration Award, making findings of fact and conclusions of law. *See* Exhibit 2, *Arbitration Award,* attached hereto and incorporated by reference.

22. After considering testimony, depositions, exhibits, and weighing the credibility of the various witnesses, Judge Schieber made the following findings of fact:

    a. Mr. Brost visited multiple dealerships but was turned down due to poor credit. He heard a radio advertisement for JFM stating he would only need to put one dime down as a down payment to get financed. That advertisement drove Mr. Brost to visit JFM.

4

b. Before buying the Suzuki, Mr. Brost took it for a test drive. During that test drive, Mr. Brost noticed brake issues. JFM's employee denied that the Suzuki had brake problems. JFM's employee also represented to Mr. Brost that the Suzuki was perfectly fine and had recently been inspected by JFM.

c. When the Suzuki went through JFM's reconditioning process, the mechanic who inspected it identified a brake repair as being needed.

d. JFM chose not to make those brake repairs.

e. JFM did not tell Mr. Brost about the brake issue identified by its mechanic.

f. JFM's salespeople are not able to view repair orders in JFM's computer system.

g. Mr. Brost relied on JFM's representations that the Suzuki was in good condition in deciding to purchase the Suzuki.

h. The night of the purchase, Mr. Brost experienced problems with the Suzuki's brakes. These issues caused Mr. Brost to be unable to stop at traffic lights and stop signs and resulted in several near-miss accidents.

i. Mr. Brost called JFM to report the issue.

j. On August 25, 2018, Mr. Brost returned it to JFM. Mr. Brost asked JFM to unwind the deal and return his money and Grand Am.

k. JFM refused.

l. Mr. Brost left JFM's lot that day in his mother's vehicle. Mr. Brost took the keys to the Suzuki with him but left the Suzuki at JFM's lot.

m. Mr. Brost returned the Suzuki's keys and title along with a letter to JFM. The letter requested a return of his money and Grand Am because he had not received title.

n. Mr. Brost contacted the police and sought to file a stolen vehicle report.

    o. On September 14, 2018, Mr. Brost met with Police Officers Judy Williams and LaTosha Woods at a QuikTrip next to JFM's lot.

    p. Mr. Brost provided the Officers a description of the Suzuki and told them where he had left it at JFM's lot.

    q. The Officers proceeded to JFM's lot and spoke with Hector Espinoza. The Officers testified that Mr. Espinoza appeared to recognize the vehicle and was able to show them surveillance footage of a vehicle matching the description Mr. Brost had given being towed away from JFM's lot.

23. Based on the findings of fact, Judge Schieber concluded that JFM violated the Missouri Merchandising Practices Act. Further, Judge Schieber concluded that JFM affirmatively misrepresented the condition of the Suzuki to Mr. Brost, had concealed the known safety issue with the Suzuki's brakes, and JFM converted Mr. Brost's down payment and trade-in (a Pontiac Grand-Am). *See* Exhibit 2.

24. Furthermore, Judge Schieber concluded that JFM committed fraud by clear and convincing evidence by intending Mr. Brost to rely upon misrepresentations as to the condition of the 2012 Suzuki.

25. Judge Schieber found that the misrepresentations were apparent from the context in which they were made. While on the test drive, Mr. Brost expressed concern with the brakes on the Suzuki. It was in response to this inquiry that T.J. Clark represented that "the car was fine," that JFM had recently inspected the Suzuki, and that Mr. Brost was simply overreacting.

26. Judge Schieber concluded that Mr. Brost's reliance on JFM's false representations was undisputed.

27. Mr. Brost testified that if he had known of the Suzuki's brake problems, he would not have purchased the vehicle. There is no evidence to the contrary.

6

28. The findings of fact determined that in responding to Mr. Brost's inquiry about the Suzuki's brakes, T.J. Clark not only represented that the Suzuki was fine, but alluded to the fact that JFM had recently inspected the Suzuki. T.J. Clark also represented to Mr. Brost that the problem he was noticing with the Suzuki's brakes could be chalked up to the fact that Mr. Brost was simply not used to driving a vehicle with four cylinders.

29. Judge Schieber concluded that these representations were made specifically to allay Mr. Brost's concerns, making his reliance upon them objectively reasonable.

30. Judge Schieber ruled in favor of Mr. Brost on the MMPA claims and fraud claims against JFM.

31. Actual damages based upon the conduct of JFM were awarded in the amount of $30,000.00. Judge Schieber further found that JFM was liable for punitive damages and attorney's fees in an amount to be determined following supplemental submissions by the parties.

### V. HARCO POLICY

32. Harco realleges and incorporates by reference the allegations set for in the paragraphs 1-29 of this complaint.

33. Harco issued a Commercial Package Policy to its named insured, JF Enterprises, LLC d/b/a Jeremy Franklin Mitsubishi, bearing Policy No. CPP 0006577 02, for the effective policy period of December 1, 2017 to December 1, 2018 (the "Policy"). The Policy contains, among other types of coverage, Commercial General Liability ("CGL"), and Commercial Property Coverage. A copy of the Policy is attached hereto as Exhibit 3.

34. The Harco Policy contains the following relevant provisions, among others:

**AUTO DEALERS COVERAGE FORM – CA 00 25 10 13 SECTION II – GENERAL LIABILITY COVERAGES**

## SECTION III – ACTS, ERRORS OR OMISSIONS LIABILITY COVERAGES

### A. Coverage

We will pay all sums that an "insured" legally must pay as damages because of any "act, error or omission" of the "insured" to which this insurance applies and arising out of the conduct of your "auto dealer operations", but only if the "act, error or omission" is committed in the coverage territory during the policy period.

We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "acts, error or omissions" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. But:

**1.** The amount we will pay for damages is limited as described in Paragraph **E.** Limits Of Insurance and Deductible; and

**2.** Our duty to defend or settle ends when we have used up the applicable limit of insurance in the payment of judgments or settlements. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **D.** Supplementary Payments.

*****

### B. Exclusions

This insurance does not apply to:

**1.** Criminal, Fraudulent, Malicious, Dishonest Or Intentional Acts

Damages arising out of any criminal, fraudulent, malicious, dishonest or intentional "act, error or omission" by an "insured", including the willful or reckless violation of any law or regulation. However, this exclusion does not apply to any "insured" who did not:

a. Personally commit;
b. Personally participate in;
c. Personally acquiesce to; or
d. Remain passive after having knowledge of any such "act, error or omission".

**2.** Bodily Injury, Property Damage, or Personal and Advertising Injury

8

"Bodily injury," "property damage" or "personal and advertising injury".

**3.** Profit Gain

Damages based upon, attributable to or arising in fact out of the gaining of any profit, remuneration or advantage to which any "insured" was not entitled.

**4.** Contractual

Liability for which the "insured" has assumed in a contract or agreement. This exclusion does not apply to liability for damages that the "insured" would have in the absence of a contract or agreement.

**5.** Noncompensatory Damages

Criminal fines or penalties imposed by law or regulation, punitive or exemplary damages or demands for injunctive or equitable relief.

*****

**C. Who is an Insured**
The following are "insureds" for "Acts, errors, or omissions":
**1.** You.
**3.** Your members, if you are a limited liability company, but only with respect to the conduct of your "adut dealer operations." Your managers are also "insureds," but only with respect to their duties as your managers.
**5.** Your "employees," other than your "executive officers (if you are an organization other than a partnership or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of employment by you or while performing duties related to the conduct of your "auto dealer operations".

*****

**D. Supplementary Payments**
With respect to "Acts, Errors, or Omissions" Liability Coverage, we will pay for the "insured"

1. All expenses we incur.
2. The costs of bonds to release attachments in any suit…
3. All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.
4. All court costs taxed against the "insured" in any "suit" against the "insured" we defense. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

9

> 5. All interest on the full amount of any judgment that accrues after entry of judgment…

*****

**SECTION V – DEFINITIONS**

> B. "Act, error or omission" means any actual or alleged negligent act, error or omission committed by an "insured" in the course of your "auto dealer operations" arising:
>
>> 1. Out of an "insured's" failure to comply with any local, state or federal law or regulation concerning the disclosure of credit or lease terms to consumers in connection with the sale or lease of an "auto" in your "auto dealer operations", including, but not limited to, the Truth In Lending and Consumer Leasing Acts;
>>
>> 2. Out of an "insured's" failure to comply with any local, state or federal law or regulation concerning the disclosure of accurate odometer mileage to consumers in connection with the sale or lease of an "auto" in your "auto dealer operations";
>>
>> 3. In an "insured's" capacity as an insurance agent or broker in the offering, placement or maintenance of any "auto" physical damage, auto loan/lease gap, credit life or credit disability insurance sold in connection with the sale or lease of an "auto" in your "auto dealer operations", but only if the "insured" holds a valid insurance agent or broker license at the time the "act, error or omission" is committed, in the jurisdiction in which your "auto dealer operations" is located, if required to do so by such jurisdiction; and
>>
>> 4. Out of a defect in title in connection with the sale or lease of an "auto" in your "auto dealer operations".
>
> M. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

35. An Endorsement to the Policy, entitled "Acts Errors or Omissions Liability Coverages – Broadened Coverage", states in pertinent part,

### ACTS ERRORS OR OMISSIONS LIABILITY COVERAGES – BROADENED COVERAGE CA 74 45 04 14

This endorsement changes the policy effective on the inception date of the policy and modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM

### SECTION V – DEFINITIONS

The following parts are added to Definition B. "Act, error or omission":

5. Out of an "insured's" failure to comply with any local, state or federal statute concerning the disclosure of prior auto damage to your consumers in connection with the sale or lease of an "auto" in your "auto dealer operations"

6. Out of an "insured's "failure to comply with the Federal Used Car Buyer's Guide Regulation 455 in connection with the sale or lease of an "auto" in your "auto dealer operations";

### CLAIM FOR RELIEF
### COUNT I – DECLARATORY RELIEF -- NO DUTY TO DEFEND

36. Harco realleges and incorporates by reference the allegations set forth in paragraphs 1-32 of this complaint.

37. The Harco Policy provides coverage for covered claims according to all of the terms and conditions of the policy, including any endorsements and exclusions to coverage. An actual controversy has arisen and now exists between Harco and the Defendants concerning their respective rights and duties under the Policy in that Harco contends it has no duty to defend the Defendants in connection with the Underlying Action and the Underlying Arbitration (both collectively "Actions"), whereas Defendants dispute these contentions and contend that they are entitled to a defense. The Arbitration Award entered on April 6, 2022 conclusively established that JFM affirmatively misrepresented the condition of the Suzuki to Brost, JFM concealed the known safety issue with the Suzuki's brakes from Mr. Brost, and that JFM has converted Mr. Brost's down payment and trade-in.

38. The unlawful acts and conduct of JFM were the cause of the ascertainable losses sustained by Mr. Brost.

39. The conclusions of law in the Underlying Arbitration established that JFM violated the Missouri Merchandising Practices Act and JFM committed fraud.

40. Based upon the findings of fact and conclusions of law by Judge Schieber, the unlawful acts and conduct of JFM do not constitute an "act, error, or omission" as defined under the Policy.

41. Notwithstanding that the unlawful acts and conduct of JFM do not constitute an "act, error, or omission" as defined under the Policy, the Policy contains an exclusion for "criminal, fraudulent, malicious, dishonest, or intentional acts which applies to preclude coverage for the claims and resulting damages awarded to Mr. Brost.

42. Furthermore, there is no coverage under the Policy for any award of punitive damages in the favor of Mr. Brost based upon the Noncompensatory Damages exclusion in the Policy, which excludes coverage for punitive or exemplary damages.

43. A judicial determination is necessary and appropriate at this time under the circumstances in order that Harco may ascertain its rights and duties under the Policy. Such declaration would have a practical effect by informing the parties' future conduct.

WHEREFORE, Harco prays for judgment against Defendants as follows:

1. For a declaration that Harco has no duty to defend the Defendants in connection with the Actions;
2. For Harco to be awarded costs incurred herein; and
3. For any other and further relief as the Court may deem proper.

**COUNT II – DECLARATORY RELIEF -- NO DUTY TO INDEMNIFY**

12

Case 4:22-cv-00307-RK   Document 1   Filed 05/09/22   Page 12 of 15

44. Harco realleges and incorporates by reference the allegations set forth in paragraphs 1-41 of this complaint.

45. The Policy provides coverage for covered claims according to all of the terms and conditions of the policy, including any endorsements and exclusions to coverage. An actual controversy has arisen and now exists between Harco and the Defendants concerning their respective rights and duties under the Policy in that Harco contends it has no duty to indemnify the Defendants in connection with the Underlying Action and the Underlying Arbitration (both collectively "Actions"), whereas Defendants dispute these contentions and contend that they are entitled to indemnity.

46. The arbitration award entered on April 6, 2022 conclusively established that JFM made intentional misrepresentations pertaining to the condition of the Suzuki to Mr. Brost. The conclusions of law established that JFM committed fraud.

47. The unlawful acts and conduct of JFM were the cause of the ascertainable losses sustained by Mr. Brost.

48. The arbitrator's conclusions of law established that JFM violated the Missouri Merchandising Practices Act and JFM committed fraud.

49. The fraudulent conduct and actions of JFM, based upon the findings of fact and conclusions of law by Judge Schieber, do not constitute an "act, error, or omission" as defined under the Policy.

50. Notwithstanding that the unlawful acts and conduct of JFM do not constitute an "act, error, or omission" as defined under the Policy, the Policy contains a Criminal, Fraudulent, Malicious, Dishonest, Or Intentional Acts exclusion which applies to preclude coverage for the claims and resulting damages awarded to Mr. Brost.

51. Furthermore, there is no coverage under the Policy for any award of punitive damages

in the favor of Mr. Brost based upon the Noncompensatory Damages exclusion in the Policy, which excludes coverage for punitive or exemplary damages.

52. A judicial determination is necessary and appropriate at this time under the circumstances in order that Harco may ascertain its rights and duties under the Policy. Such declaration would have a practical effect by informing the parties' future conduct.

WHEREFORE, Harco prays for judgment against Defendants as follows:

4. For a declaration that Harco has no duty to indemnify the Defendants in connection with the Actions;

5. For Harco to be awarded costs incurred herein; and

6. For any other and further relief as the Court may deem proper.

Respectfully Submitted,

**TRESSLER, LLP**

_____
Jennifer A. Dancy
233 S. Wacker, 61st Floor
Chicago, IL 60606
Phone: (312) 627-4158
Fax: (312)-627-1717
jdancy@tresslerllp.com


Timothy M. Jabbour, Esq.
Pro Hac Vice Forthcoming
163 Madison Avenue, Suite 404
Morristown, New Jersey 07960
Phone: (973) 848-2901

14

Fax: (973) 536-0333
tjabbour@tresslerllp.com

**Attorneys for Harco National Insurance Compan**